[No. 13709.   In Bank. — December 22, 1890.]

THEODORE HAVEMEYER ET AL., PETITIONERS, *v.* THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, WILLIAM T. WALLACE, JUDGE, RESPONDENTS.

| | |
|---|---|
| 87 | 267 |
| 145 | 763 |
| 145 | 768 |

CONTEMPT — DISOBEDIENCE TO WRIT OF PROHIBITION — ACTION OF RECEIVER — NEGLECT OF JUDGE. — After service of an alternative writ of prohibition commanding a superior judge, and a receiver appointed by him, to desist from interfering with the possession of property or the conduct of business in the hands of strangers to the suit, claiming title thereto, if the receiver continues to interfere with their possession and the conduct of their business, and attempts to oust them therefrom, and the superior judge neglects his duty to see that the receiver obeys the writ, each is guilty of contempt in disobeying the alternative writ.

ID. — SCRAMBLING POSSESSION — VOID ORDER. — Where, prior to the service of the writ, the receiver has only acquired a mixed and scrambling possession of the property, and the order appointing him is void, any further attempts by him to take and hold possession cannot be justified under the plea that possession had been fully taken, and that nothing was done after service of the writ except to preserve the *status quo.*

ID. — JURISDICTION — GOOD FAITH — TECHNICAL CONTEMPT — NOMINAL FINE. — Where the acts of the receiver and of the judge depended for their validity upon the jurisdiction of the judge to appoint the receiver, and they were erroneously advised that the possession of the receiver was lawful and complete, and that he must maintain it, notwithstanding the service of the alternative writ of prohibition, and that the judge could not interfere with or control his acts, pending the hearing of the cause, and each of them acted in good faith upon such advice, and neither intended any disrespect of the court, such good faith, though it cannot wholly relieve them of the contempt of which they are technically guilty, will preclude their being punished otherwise than by a nominal fine.

CONTEMPT proceedings against William T. Wallace, judge of the superior court of the city and county of San Francisco, and Patrick Reddy, receiver, for alleged disobedience to an alternative writ of prohibition. The facts are stated in the opinion of the court, and in the opinion in *Havemeyer* v. *Superior Court*, 84 Cal. 327.

*Wilson & Wilson*, and *Garber, Boalt & Bishop*, for Petitioners.

*William T. Wallace, in propria persona, Sullivan & Sullivan, W. H. Metson,* and *Robert Mitchell,* for Respondents.

BEATTY, C. J. — The application for a peremptory writ of prohibition herein, and the charge that the judge of the superior court and his receiver had violated the injunction contained in the preliminary or alternative writ, and had thereby committed a contempt, were heard and submitted together. In our opinion, filed at the time of deciding the cause (see 84 Cal. 327), we stated very fully all the facts necessary to be considered in deciding upon the charge of contempt, excepting only those relating to the character and extent of Mr. Reddy's possession of the refinery, etc., at the time he was served with the alternative writ.

Avoiding, as far as possible, any repetition of that statement, we proceed to consider whether the charge of contempt has been made out.

That Mr. Reddy did interfere with the possession and control, by petitioners, of the refinery and other property claimed by them in their own right, and described in our writ, that he did interfere with the conduct and business of the same, and that he did continue to exercise, with respect thereto, all the powers granted in the order appointing him receiver, after service of our writ, is conceded, and it is also conceded that the judge of the superior court, after like notice, entirely and purposely abstained from any interference with his proceedings.

But it is contended in behalf of the receiver that before he had any notice of our order he was in complete and absolute possession of all the property claimed by the respondents, and that his subsequent dealings with it were only such as were necessarily incumbent upon him by reason of such possession. In behalf of the judge, it is claimed that the effect of our writ was to deprive him of all control and direction of the receiver, and consequently to absolve him from any responsibility for his acts.

This claim of exemption from responsibility on the part of the judge cannot be allowed. The object and purpose of our order and writ, expressed in the plainest terms (84 Cal. 351), was to restrain the action of the court. It was addressed directly to the judge, and only indirectly, through him, to the receiver. Both were bound by it, but it was nevertheless the duty of the principal to see that the agent obeyed it; and whatever the receiver did in violation of its terms, the judge must answer for, if, with knowledge of his agent's proceedings, he refrained from exercising his undoubted power to control them. And such, as we have seen, is the case.

The whole matter to be determined, therefore, is the correctness of the receiver's position; i. e., that he was in full possession before he had any notice of the injunction, and that he did nothing thereafter except to preserve things *in statu quo.*

He contends that from the afternoon of February 17th he was in full, complete, and absolute possession of the refinery, shops, and offices, and was only impeded and interrupted in his control of some of the personal property therein.

The assumption, however, upon which he builds his entire argument is, that he was acting under a valid appointment, and had a lawful right to do everything that he attempted to do; and since its basis is swept away, there is little left of the argument. We have decided—and we have no doubt of the correctness of that decision—that the appointment of Mr. Reddy, and all the proceedings in the matter of the receivership, were void. Therefore, when he entered into the refinery, shops, and offices, he did so as a mere trespasser, without any lawful warrant whatsoever, and all his acts in attempting to obtain possession must be viewed in that light.

We do not wish to be understood as conceding that Mr. Reddy's acts, even if his appointment had been valid,

would have been entirely justifiable. We are not called upon to decide how summarily a receiver lawfully appointed may proceed in wresting the possession of property, specifically described in the order appointing him, out of the hands of strangers to the action, claiming it in their own right. We had supposed that in such case it would be his duty to abstain from the exercise of anything like force; that if he found the claim of ownership and possession by a third party to be made in good faith, he would report the matter to the court, and if he proceeded further, do so only by an action for the recovery of the property. If he was satisfied that such claim was a sham, and the possession by such stranger held by collusion with (or as a mere agent or servant of) a party bound by the order, that he would still report the facts to the court, and have the persons resisting his authority cited to answer for contempt; and that after a hearing upon the citation, the court would not, unless in a plain case, order a writ of assistance to dispossess such parties, but would direct an action to be brought, so that their rights might be fully and fairly litigated.

But, as we have said, these are matters which we are not called upon to decide here, and we have given this very general expression of our views only in order not to seem to acquiesce in the proposition so strenuously urged by counsel, to the effect that in the case supposed it is the right and duty of the receiver to take the property regardless of the claims and possession of third parties; that it is their duty to yield unquestioning obedience to his commands, surrender possession of the property, and petition the court for leave to sue for its recovery.

The question here is much simpler; it is, whether Mr. Reddy and his men, regarded as mere naked trespassers, entering without any sort of lawful warrant, had, prior to the hour of three o'clock, P. M., on February 18th, succeeded in ousting the petitioners from their lawful pos-

session of the refinery, shops, etc., and in gaining so full
and complete a possession themselves as to justify their
subsequent proceedings. The testimony bearing upon
this point is quite voluminous, and to some extent con-
flicting, though not more so than might naturally have
been expected, considering the opposite points of view
from which the occurrences at the refinery were viewed
by those who participated in and have testified regard-
ing them.

It appears that Mr. Reddy, armed with the commission
from the superior court, and attended by a number of
men, acting in obedience to his orders, entered the re-
finery on the afternoon of February 17th, stated the
authority under which he assumed to act, declared him-
self in possession, ordered the superintendent of the
works to shut them down, disposed his men about the
building, and stopped the delivery of sugar then in
progress. The superintendent, however, refused to take
any orders from Mr. Reddy, referred him to Mr. Mott, the
general agent of the petitioners, and asserted their claims
to the property. There is no doubt that the superin-
tendent and his foreman were, to some extent, intimidated
by the sudden irruption of Mr. Reddy and his men, and
the threat of arrest and punishment if they refused to
submit, and, no doubt, they did make use of various
temporizing expedients in order to maintain their ground
without resorting to open and violent resistance; but they
neither left the building nor acknowledged Mr. Reddy's
authority.

The dispute ended at last in a sort of truce for the
night, both parties remaining on the ground, the super-
intendent being allowed until next day to take legal
advice and determine whether he would yield the pos-
session or not. Acting upon the advice he received,
the superintendent notified Mr. Reddy the next day that
he would continue to resist him by all means short of
force, whereupon Mr. Reddy applied to the court for the

assistance of the sheriff.  In the affidavit which he presented to the court for that purpose, and which was, as is evident, framed upon his theory as to the validity of his appointment and the entire regularity of his proceedings, he states that he has entered into possession of the refinery, but that H. C. Mott and R. H. Sprague (he general agent and superintendent of petitioners) are impeding, hindering, and delaying him in the discharge of his duties as receiver, and are refusing to allow him to take into his possession and control certain property situate on the premises.  This affidavit, as an assertion of possession, is almost *felo de se* in itself, and would have been quite so if it had disclosed the further and undisputed fact that Mott and Sprague were really impeding and hindering the receiver by their assertion of, and their attempt to uphold, the possession and right of the petitioners.  Evidently, too, the superior judge attached less importance to the legal conclusion stated in the affidavit than to the facts by which it was qualified; for, by the terms of his order to the sheriff, that officer was commanded to do what was necessary to place Mr. Reddy in exclusive, full, and complete possession.

The sheriff, in the return which he subsequently made of this order, seems to have fallen back on the theory of the affidavit, that Mr. Reddy was in possession of the refinery, though impeded and interfered with by certain persons whom he found on the premises, and who at his request retired therefrom, leaving Mr. Reddy in peaceful, undisturbed, and undisputed possession.  He does not disclose who these persons were, but the testimony shows that the superintendent and foreman of the refinery were meant.

When Mr. Reddy and the sheriff came back, on the 18th, armed with a new order, Mr. Sprague and his foreman did retire from the building, in obedience to their demand, but almost immediately returned.  There is a

conflict of testimony as to the terms upon which they re-entered. Mr. Reddy's testimony — in which he is corroborated by others — is, that they came back at his request, to take care of the large amount of sugar then in solution, under a promise to obey his orders and shut down the works as speedily as that could be done without too serious loss. They, on the other hand, claimed that they only promised not to oppose Mr. Reddy's orders, and declared their purpose to remain on the premises in the interest of the petitioners, and in their pay. It is not necessary, in our opinion, to reconcile this conflict in the testimony, which in all probability is mainly due to the different construction given by the two parties to what was actually said. We will assume that the arrangement was such as Mr. Reddy states it to have been, for even then he did not get complete possession. The only two persons removed from the premises, or who acknowledged Mr. Reddy's authority, were Mr. Sprague and his foreman. Mr. Mott, the general agent, was in a position of authority over them, and over more than a hundred other employees then on the premises, none of whom were removed, and none of whom ever received or obeyed any order from Mr. Reddy before he was enjoined, and all of whom continued thereafter in the pay and service of the petitioners. Mr. Mott, it is true, was not at the refinery while the sheriff was there; but he had been there before, resisting Mr. Reddy, and he returned afterwards, and renewed his resistance, so that Mr. Reddy was compelled to remove him by force (a very gentle force, it is true, but it would no doubt have been greater if there had been greater resistance). In the mean time, Mr. Reddy had been served with our writ, and Mr. Sprague had disclaimed his authority, and, contrary to his orders, had put a large additional amount of sugar in solution.

These being the facts, it is clear that there was, in the best view for the respondents, a mixed and scrambling

possession of the refinery, in which case the legal seisin, as it always does, attached itself to the right of possession.

The result was, that Mr. Reddy found himself in the position of being obliged to decide, at his peril, whether his authority was valid or not; and as soon as service was made upon the superior judge, at a later hour on the same day, he was placed in the same position. A copy of the petition for the writ of prohibition, our order for the writ, and the writ itself, were all served together, and by them the respondents were fully advised that the validity of their proceedings was challenged upon jurisdictional grounds, and that until our further order, they must suspend their proceedings against the property described in the writ. Their claim to be in possession of the refinery, and especially their right to discharge the superintendent of the petitioners and put another in his place, stop the delivery of sugar and close down the works, depended upon the jurisdiction to appoint a receiver. If that proceeding was void, they were bound to withdraw from the refinery, shops, office, etc., and leave the petitioners unmolested. If, on the other hand, the appointment of the receiver was valid, they might maintain the *status quo*, and perhaps were justified in doing the other things above mentioned. Being in this situation, they did right in taking legal advice; but the fact that they did so, and acted upon it in good faith, does not wholly relieve them from the consequences of the actual disobedience of which they were guilty.

They were advised that the possession of the receiver was lawful and complete, and that he must do all that he subsequently did. They were also advised that the superior judge could not interfere with or control the acts of the receiver pending the hearing of the cause. This advise was erroneous; but we have no doubt that it was given, accepted, and acted upon in good faith, and therefore that the respondents, though technically guilty of contempt, did not intend any disrespect to the court,

or any infraction of its orders, and that they should not be punished otherwise than by a nominal fine.

The finding of the court is, that William T. Wallace, judge of the superior court, and Patrick Reddy, Esq., did on the eighteenth day of February, 1890, and on various days thereafter, violate our injunction herein issued and served on said eighteenth day of February, 1890, by continuing in and about the refinery and other property in said writ described, and by interfering with the petitioners in the conduct of their business therein, and did thereby disobey our lawful order and writ, and were therein guilty of a contempt of this court.

Wherefore it is ordered that said William T. Wallace and Patrick Reddy be and each of them is hereby fined in the sum of ten dollars.

FOX, J., SHARPSTEIN, J., McFARLAND, J., and PATERSON, J., concurred.

THORNTON, J., dissenting. — I dissent. There is no evidence of contempt committed by either party in this case.