[Civ. No. 14268. Second Dist., Div. Three. Jan. 26, 1944.]

CARL P. GROVES, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

William R. Law for Petitioner.

Samuel A. Rosenthal and Bertram S. Harris for Respondent.

SHINN, J.—This is a proceeding to review an order of the superior court which according to its terms found petitioner Carl P. Groves "guilty of contempt of the judgments of the court, heretofore made," sentenced him to five days imprisonment and suspended execution of the sentence upon certain conditions.

The contempt proceeding was instituted by the filing of an affidavit of Bertram S. Harris, attorney for one Morvay, which set forth at length the history of litigation between Morvay and petitioner arising out of a contract for the manufacture and sale of an automobile polishing compound, and also alleged the commission of acts by petitioner which were claimed

to have been in violation of two judgments theretofore rendered by the superior court, only one of which had granted injunctive relief. Petitioner filed an answering affidavit, in which he did not deny commission of the alleged acts but did deny that the injunction was operative at the time. These two affidavits presented the issue to be tried and they also constituted all of the evidence taken at the hearing.

The following statement of facts, including excerpts from the contract which gave rise to the litigation, is culled from the Harris affidavit. On May 24, 1940, petitioner and H. L. Groves, as licensors, entered into an agreement with Morvay, as licensee, by which the latter was licensed, for a term of ten years with an option of ten more, as exclusive distributor in the United States, to sell "Granitize," a product manufactured by the Groves under a secret formula which they owned. The Groves were to manufacture and supply Morvay with such quantities as his business should require and the latter agreed to use his best efforts to introduce, market and promote the sale of the product in the United States. Morvay was to have the exclusive right to the use of the name "Granitize," and the Groves were not to sell to others, for so long as the agreement remained in force and effect; in certain contingencies, including the failure of the Groves for a period of thirty days to manufacture, make up and compound the product and their breach of any of the terms or conditions of the contract, Morvay was to be given the secret formula, whereupon he was to have "the right, license and authority to manufacture, make up and compound 'Granitize' to fully supply licensee's demands, without paying to the licensor any compensation whatsoever for such right, license and authority"; the formula was placed with a depositary to be delivered to Morvay if the Groves "discontinued, abandoned or refused the further manufacture, making up or compounding of 'Granitize'" and in that event the formula was to "become the property of the licensee, his heirs or assigns for the term of this agreement or any extensions thereof, and upon the termination of this agreement or any extensions thereof, said formula is to be taken and retained by licensor, his heirs or assigns." According to the affidavit the Groves violated the terms of the agreement in selling directly to their own customers, whereupon Morvay brought suit and obtained judgment against them for money and other relief, which read in part as follows: "That the defendants H. L. Groves and C. P.

Groves and each of them, and anyone claiming under them or either of them, or acting by, through or for either of them, their associates, agents, servants and employees be and they are hereby permanently enjoined and restrained from in any manner or by any means, directly or indirectly through their agents, servants and employees, sell or distribute the product known as 'GRANITIZE,' receiving orders for the sale from any solicited business either directly or indirectly, through their agents, servants and employees, of Granitize, except to or through the plaintiff or with the knowledge and consent of the plaintiff, during the life of the contract dated May 24, 1940, and any renewals thereunder." (This judgment, although dated January. 26, 1942, stated that it was signed, filed and entered as of June 4, 1941. In December, 1941, Morvay had execution issued on the judgment for money and at a sale thereunder purchased for $100 "All of the right, title and interest of the defendant, H. L. Groves and C. F. Groves, called the licensor in that certain written agreement made and entered into on the 24th day of May, 1940, with ZOLTAN MORVAY, therein called the licensee for the sale and distribution of 'GRANITIZE' in the United States." The fact of this sale under execution, so far as appears, was not before the court at the time the judgment was signed and filed.) In July, 1942, at another execution sale, Morvay purchased for $25 "A certain secret formula and process for the manufacture of 'Granitize' and more particularly that certain sheet of paper bearing the letter head of Granitize Products Company and setting forth in particular, the formular." In November, 1942, judgment was given in two consolidated actions which had been brought by the Groves, reading in part as follows: "III. That the said Zoltan Morvay, aka Sam Norvay, is entitled to the use of the name 'Granitize' for a period of twenty years and to manufacture the same under and by virtue of a purchase at a Sheriff's execution sale of all of the right, title and interest of Harold L. Groves and Carl P. Groves in and to that certain contract dated May 24th, 1940, by and between Harold L. Groves and Carl P. Groves and Zoltan Morvay, aka Sam Morvay. IV. That the said Zolton Morvay, aka Sam Morvay, is the owner of the secret formula for the manufacture of 'Granitize' by virtue of his purchase at a Sheriff's Execution Sale of said secret formula."

The order here under review found the facts as we have stated them and adjudged as follows: "NOW THEREFORE,

IT IS ORDERED, ADJUDGED, AND DECREED, that the said CARL P. GROVES, is Guilty of Contempt of the Judgments of the Court, heretofore made, and is sentenced to five (5) days in the County Jail, but the said CARL P. GROVES will not be required to serve said jail sentence provided, he, his agents, servants, and employees refrain from violating the court Judgments, heretofore made, and more particularly the said CARL P. GROVES, his agents, servants, and employees refrain from manufacturing and selling either directly or indirectly the product known as 'GRANITIZE' or any other product he, his agents, servants, and employees manufactures or sells or distributes, and provided, further that he refrains from either directly or indirectly soliciting any person or persons to sell 'GRANITIZE' or any other product, in which the formula now owned by the Plaintiff, ZOLTAN MORVAY, is being used for the period of twenty years from May 24, 1940, the date of the original contract between the parties.''

Through the imposition of conditions, compliance with which would enable petitioner to escape imprisonment, the order attempted to grant comprehensive injunctive relief. Petitioner was not enjoined in direct terms from committing any of the mentioned acts, but this was effectively accomplished by giving him a choice between agreeing with the court and lodging with the jailer.

By the judgment in the first case petitioner had been enjoined from selling or distributing his product, except through Morvay as his exclusive distributor, ''during the life of the contract dated May 24, 1940, and any renewals thereunder.'' By the contempt order he was restrained not only from selling but also from manufacturing ''Granitize'' ''or any other product he, his agents, servants or employees manufactures, sells or distributes.'' He was restrained until May 24, 1960, from soliciting the sale of ''Granitize'' or any other product which used the secret formula. No such relief as this had been granted by either of the mentioned decrees. It is true that by the terms of the second decree Morvay had been declared to have the right to use the name ''Granitize'' for 20 years after the date of the contract and also the right to manufacture and sell the product by virtue of his purchase of the Groves' rights under the contract at the first execution sale, and he was also declared to be the owner of the formula by virtue of the second execution sale, but this judgment was purely declaratory. Morvay's rights to use the name ''Granit-

ize'' or to manufacture or sell the product were not declared to be exclusive, nor was his ownership of the formula declared to entitle him to the exclusive use of it. The contempt order declared, in effect, that these rights were exclusive, and petitioner was ordered to recognize their exclusive nature under penalty of imprisonment. Instead of limiting the trial to a determination of the charge that an injunction had been violated, the court endeavored not only to render a new and different decree in equity but also to compel obedience thereto by prescribing punishment for its violation. And all this was attempted in the contempt proceeding, outside of the issues triable therein, and solely upon evidence furnished by affidavits.

In our state application to the court for the declaration, enforcement or protection of a right or the redress or prevention of a wrong is made by means of a civil action (Code Civ. Proc., sec. 30); there is but one form of civil action, in which the party complaining is plaintiff and the adverse party is defendant (Code Civ. Proc., secs. 307, 308). The issues made by the pleadings must be tried by the court, or jury, or may be referred to a referee (Code Civ. Proc., sec. 592).

In a proceeding in contempt where violation of an injunction is charged, the court has only to determine whether the accused has committed the acts charged and to impose punishment if guilt is found. A proceeding in contempt is not a civil action (*Hotaling* v. *Superior Court* (1923), 191 Cal. 501, 504 [217 P. 73, 29 A.L.R. 127]; *Gale* v. *Tuolumne County Water Co.* (1914), 169 Cal. 46, 51 [145 P. 532]). It is not an appropriate proceeding for the trial of questions of title (*Batchelder* v. *Moore* (1871), 42 Cal. 412; *Larrabee* v. *Selby* (1877), 52 Cal. 506; *Ex parte Hollis* (1881), 59 Cal. 405, 413; *Ex parte Casey* (1886), 71 Cal. 269 [12 P. 118]; *In re Ochoa* (1942), 50 Cal.App.2d 457 [123 P.2d 106]).

It is true that the contempt proceeding would have required a determination as to the life of the contract, and of the injunction, but as we shall point out that determination would have required the trial of new issues of fact. Petitioner was asserting rights which he claimed had accrued since the trial of the first action by reason of the alleged termination of the contract through the actions of the parties. His good faith in asserting these claims was not questioned and the claims appear to have been substantial. Under these circumstances the court should not have undertaken to deter-

mine conflicts as to the substantive rights of the parties based not upon matters that had been adjudicated, but upon the alleged termination of the contract after judgment had been rendered in the first action. (*Larrabee* v. *Selby* (1877), 52 Cal. 506; *Havemeyer* v. *Superior Court* (1890), 87 Cal. 267, 270 [25 P. 433, 10 L.R.A. 650]; *McKinley Bros.* v. *McCauley* (1932), 215 Cal. 229, 235 [9 P.2d 298]; *State Board of Equalization* v. *Superior Court* (1942), 20 Cal.2d 467, 477 [127 P.2d 4], and cases cited *supra.*)

Since petitioner did not deny having made the sales, the sole issue was whether they had been made ''during the life of the contract.'' If the contract had expired before the sales in question were made, which was during and shortly prior to July, 1943, the injunction was no longer in effect. The first question, then, would be what was meant by the phrase ''during the life of the contract'' as used in the first judgment. It appears to us that if it had been the intention to extend the injunction over the longest possible life of the agreement, namely, 20 years, the judgment would have so provided, and the phrase ''during the life of the contract'' would not have been used at all. ▮ A contract is alive so long as it remains in force and effect or, in other words, until it has been terminated either according to its own stipulations for termination or through the acts of the parties evidencing a cancellation, rescission or abandonment. The sense in which the phrase was used could have been determined with greater assurance by the court if the pleadings and the findings in the first case had been placed in evidence in the contempt proceeding. They would have disclosed the facts that were in issue and how they had been decided by the court. A judgment that is not clear and explicit on its face frequently becomes clear when it is considered with the pleadings, the findings and the contentions of the parties. However, the court, in undertaking to decide whether the injunction had been violated in July, 1943, would have found it necessary to place some construction upon the questioned phrase in the decree which limited the life of the injunction. It is clear that the purpose of the injunction suit, and of the decree, was to compel further performance on the part of the Groves, for the pressure of the decree was to force them to sell their product through Morvay. While they continued to do so they would be paid the prices stipulated in the con-

tract. Morvay was seeking to protect his right as sole distributor. At the time the case was tried, so far as shown, he had not taken over the formula and was not claiming in that case the right to manufacture his own product without paying the Groves anything for the privilege.

A reasonable construction of the decree upon the facts in evidence would have been that the phrase "during the life of the contract" meant while the Groves were manufacturing the product and selling it exclusively through Morvay in accordance with the agreement. This is true because the agreement gave Morvay the exclusive right to distribute the product only while it was being manufactured by the Groves. When he took over the formula he had the right to manufacture sufficient to meet the demands of his trade and he was to pay the Groves nothing for the privilege, but the agreement did not provide that his right to manufacture and sell under those circumstances would be exclusive. It is not to be supposed that the court intended to give him the exclusive right except upon the terms stated in the agreement, namely, so long as the main purpose of the contract was being accomplished through the manufacture of the product by the Groves and its distribution by Morvay. Under this construction of the first decree it would have been necessary for the court to determine whether the contract had been terminated by the acts of the parties before petitioner made the sales in question. Prior to that time, and after the trial of the first action, the execution sales had taken place and Morvay had asserted and established his rights as declared by the second judgment. Whether the court gave the proper effect to these execution sales is of no consequence, but it is important to consider the situation and actions of the parties in connection with that trial. It is quite apparent that neither party was rendering to or demanding from the other further performance under the agreement. Morvay was claiming that the Groves had been eliminated from the contract altogether and that he alone owned the formula, and these contentions were upheld by the court. It would appear from the judgment, (the pleadings and findings are not in the record) that he was not claiming rights under the contract but independently of it, and the effect of the decree was that he was no longer required to purchase the product from the Groves or to

pay anything for the privilege of himself manufacturing, or to otherwise render further performance.

The question whether the contract had been terminated was placed in issue by petitioner's affidavit but it was not one that could be tried in the contempt proceeding. If Morvay was dissatisfied with the failure of the court in the second case to declare his rights to be exclusive, he should have appealed from the judgment or instituted a civil action, if the second judgment left anything open as to the nature of his rights. Instead of doing that, he instituted contempt proceedings in the first action and, as we have seen, obtained an attempted adjudication which gave him rights far more extensive than those conferred by the former judgments. The court in the contempt proceeding, in order to reach its conclusion, had to determine (1) that Morvay had an exclusive right to manufacture and sell, although the second judgment, while declaring his rights, failed to make them exclusive; (2) that notwithstanding cessation of performance of the contract by the parties and the claims asserted by Morvay under the execution sales, there had been no abandonment or termination of the agreement through the action of the parties; (3) that the second judgment did not, in practical effect, supersede the first one because the rights declared to exist under the execution sales were inconsistent with rights claimed under the contract as established by the first judgment, and (4) that under the agreement, when Morvay took the formula and did his own manufacturing he had the exclusive right to manufacture and sell. (We have seen that there was no such provision in the agreement.) If these matters, which had not been previously adjudicated, had been submitted to the court for decision by means of a civil action, the equity powers of the court could have been exercised only after an orderly trial of the new issues. The question here is not whether the court decided any or all of them correctly; they should not have been decided at all. For the foregoing reasons the relief attempted to be granted by the order was clearly beyond the jurisdiction of the court in the contempt proceeding.

Another reason why the order must be annulled is that the affidavit upon which the order to show cause was based was insufficient. In an attempt to allege that petitioner had made sales in a forbidden manner ''during

the life of the contract," as stated in the first judgment, the affidavit stated as follows: "That the contract dated May 24, 1940, annexed hereto and made a part hereof as Exhibit 'A' is still in full force and effect as shown in this Affidavit by the Bill of Sale being Exhibit 'C' and made a part hereof and as set forth in Paragraph III, Page 2 of Exhibit 'E' being a part of this affidavit." The Exhibit "C" referred to is the sheriff's certificate purporting to sell to Morvay the Groves' rights under the contract; "paragraph III, page 2, of Exhibit 'E'" is the paragraph III which we have quoted from the second judgment, which declares Morvay's rights under that execution sale. The conclusion stated in the affidavit that the contract was still in full force and effect, qualified by references which strongly indicated that it was no longer in force or effect, coupled with many other statements of the affidavit which indicated that the parties had long since ceased to render performance under the contract, was wholly insufficient as an allegation that the contract was still alive.

If the affidavit by which a constructive contempt is charged fails to state all of the facts constituting guilt of the offense, the court is without jurisdiction in the proceeding. (*Frowley* v. *Superior Court* (1910), 158 Cal. 220 [110 P. 817]; *Otis* v. *Superior Court* (1905), 148 Cal. 129 [82 P. 853]; *Wilde* v. *Superior Court* (1942), 53 Cal.App.2d 168, 177 [127 P.2d 560]; and cases listed in 5 Cal.Jur., p. 939.)

The affidavit, the evidence and the findings are to be strictly construed in favor of the accused. The presumption in favor of the regularity of the proceedings and the order or judgment does not apply in contempt matters. (*Batchelder* v. *Moore, supra,* 42 Cal. 412, 414; *Frowley* v. *Superior Court, supra,* and cases cited above.) The court was therefore without jurisdiction to convict petitioner of contempt because of the failure of the affidavit to sufficiently allege that the acts were committed during the life of the contract.

The court made lengthy findings of fact, incorporating in the order the substance of the Harris affidavit, including the excerpts from the two judgments which we have heretofore quoted, but made no finding to the effect that the contract was still alive or in force and effect. There is no statutory requirement for findings in contempt proceedings which are initiated by affidavit. (*In re Selowsky* (1918), 38 Cal. App. 569, 576 [177 P. 301].) It is necessary that the order

recite the facts of a contempt committed in the immediate view and presence of the court (Code Civ. Proc., sec. 1211; and cases listed in 5 Cal.Jur., p. 938), and it is the practice to make findings in cases of constructive contempt. However, the failure of the court to find that the contract was still in force and effect, or "alive," which means the same thing, is quite significant, and leaves us in doubt whether the court understood that to be a material fact.

We do not think that any conviction of contempt should be allowed to stand unless it appears from the record beyond question that the trial court found all the facts to exist which constituted the offense. (*Merritt* v. *Superior Court* (1928), 93 Cal.App. 177 [269 P. 547]; *In re Meyer* (1933), 131 Cal.App. 41, 45 [20 P.2d 732]; *In re Cardella* (1941), 47 Cal.App.2d 329 [117 P.2d 908].) We cannot say that the court would not have been justified upon the evidence before it in holding that the contract was no longer in force or effect, nor can we say that the court, even inferentially, found the contract to be still in force and effect. The order imposed a restraint upon petitioner for 20 years after May 24, 1940, and not "during the life of the contract," which leads us to believe that the court drew no distinction between the two terms. However, the invalidity of the order does not rest upon this omission alone, for if the court had made a finding that the contract was still alive, it would not have remedied the failure of the affidavit to allege that fact. (See cases heretofore cited.) The merits of the conflicting claims of the parties are not before us in this proceeding and we are deciding only that the court was without jurisdiction to make the order under review.

The order is annulled.

Desmond, P. J., and Shaw, J. pro tem., concurred.