[Crim. No. 148.   First Appellate District.—August 31, 1908.]

Ex Parte DR. EDWARD J. CREELY, on Habeas Corpus.

CONTEMPT OF COURT—EXHORTATION TO JURY WHILE RETIRING NOT TO CONVICT.—An affidavit, upon which a judgment punishing an offending party for contempt of court, committed out of its presence, is based, which shows that such person, while passing the jury in a criminal action, who had retired to deliberate upon their verdict, called out to them in a loud voice, heard by each of them and by the officers in charge, not to convict the defendant, naming him, is sufficient to support the judgment, though not averring specifically that the language was used with intent to influence the jury.

Id.—Presumption of Intent from Deliberate Act.—The offender must be presumed to have intended the ordinary consequences of his own deliberate act in addressing the jury as he did, under circumstances fully known to him, whereby he committed a flagrant breach of propriety, and interfered with the authority and proceedings of the court.

Id.—Trial Jury an Appendage of Court—Inherent Power of Court. The trial jury in charge of the officers of the law was an appendage of the court, acting under its authority, and part of the machinery by which the defendant was being tried; and the court has inherent power to punish an offender who has acted in contempt of its authority.

PETITION for discharge on writ of *habeas corpus,* from the custody of the sheriff holding petitioner, under punishment for contempt by the Superior Court of the City and County of San Francisco. M. T. Dooling, Judge presiding.

The facts are stated in the opinion of the court.

Alfred H. Cohen, and Jas. H. Creely, for Petitioner.

W. H. Langdon, District Attorney, for Respondent.

COOPER, P. J.—The verified petition for writ of *habeas corpus* in this case states that the petitioner is unlawfully restrained of his liberty by the sheriff of the city and county of San Francisco, by reason of a judgment and order made by Honorable M. T. Dooling, acting judge of the superior court of the city and county of San Francisco, adjudging petitioner guilty of contempt of court, said contempt being constructive and not occurring in the presence or hearing of the court. The petition states that the affidavit on which the citation was issued did not give the court jurisdiction, and "did not show on its face or at all a case of contempt, and that the said affidavit utterly fails to state any facts which, in point of law, do or might constitute a contempt on the part of this petitioner." Upon this petition the court, under the duty imposed upon it by law, made an order granting the writ, making it returnable before the court on June 11, 1908, and expressly directed that "a copy of the petition and order be served upon the district attorney" at least ten days before the hearing. At the time so set for hearing the petitioner

appeared in person and by his attorneys, but no one appeared
from the district attorney's office. The return then made by
the sheriff was not sufficient, as it did not contain a copy of
the affidavit on which the order to show cause had issued, nor
did it contain a copy of the judgment. Petitioner's attor-
ney asked that the petitioner be discharged, by reason of
such defective return and failure of the district attorney to
appear, but the court declined to discharge the prisoner, and
made an order continuing the case so that the return might
be amended and the district attorney given a further op-
portunity to appear in support of the judgment. No further
return was made to the writ during the month of June or
July. The month of July being the vacation month, the
judges not all being present on the regular motion day, the
matter was continued to the regular motion day, August 24,
1908. On the last named day, and not before, another re-
turn was made and filed in court by the sheriff, giving the
order in full and the copy of the affidavit on which the pro-
ceeding is based. The district attorney, however, did not
appear to argue the said matter, nor has he filed any brief to
assist the court in the determination thereof. We have, how-
ever, without any aid from the district attorney, given the
matter as full investigation as the time at our disposal would
justify, for the reason that the matter is one of importance
to the orderly administration of justice, as well as to the
liberty and constitutional rights of the petitioner. The affi-
davit was made by Isaac Penny, one of the jurors of the
panel in the case of *People* v. *Abraham Ruef*, and is, after
giving the title, as follows:

"Isaac Penny, being duly sworn, deposes and says:

"That on the 29th day of April, 1908, the empaneling of a
jury was duly completed in the above entitled court to try
the above entitled cause of *People of the State of California*
v. *Abraham Ruef*, case number 840, and that affiant was duly
sworn as a member of said jury, and that the other mem-
bers thereof so duly impaneled were John Koenenman, Pat-
rick Connolly, Robert Trost, Edwin Mohrig, William M.
Leverone, John Louis Vermeil, Valentine Franz, F. J. W.
Anderson, James E. Lennon, S. R. Crooks, and W. F. Swift.

"That on the 18th day of May, 1908, the taking of testi-
mony in said cause was completed, and the argument of coun-

sel commenced, and that on the 19th day of May, 1908, the argument of counsel in said cause was completed and said jury was duly instructed by said court upon the law in said case, and having signified its desire to retire for deliberation, four deputy sheriffs of said City and County of San Francisco were duly sworn in open court by the clerk of said court, at the direction of the judge thereof, to keep the members of said jury together in some private and convenient place and not to permit any person to speak to or communicate with them, nor to do so themselves, nor for either of them to do so himself unless by order of the court, or to ask them whether they had agreed upon a verdict and to return them into court when they had so agreed, or when ordered by the court; and that said jury thereupon retired for deliberation in the custody of said four deputy sheriffs, so sworn as aforesaid, to a private and convenient place, and commenced to deliberate upon the evidence in said cause for the purpose of reaching and returning a verdict thereon in said cause; and that said jury continued to remain in the custody of said deputy sheriffs, so sworn as aforesaid for the purpose as aforesaid, to and until the 21st day of May, 1908, and that on said day, while said jury was so in the custody of said deputy sheriffs, for the purpose aforesaid, and while they were being brought by said deputy sheriffs from the St. Francis Hotel in this City and County where they had been kept together by said deputy sheriffs during a part of the preceding night and while they were thus being taken to the aforesaid private and convenient place for them to further deliberate, to wit, to the jury room of the above entitled court in Department No. 6 thereof, and while they were all together in the custody of said deputy sheriffs, so sworn as aforesaid for the purpose as aforesaid, one Dr. Edward J. Creely passed them in a buggy at the corner of Leavenworth street and Golden Gate avenue in this city and county on said 21st day of May, 1908, and in passing them called out to said jury and said in a loud and distinct tone of voice so that this affiant and each of the other members of said jury and the deputy sheriffs, who were so in charge of said jury, could and did hear him 'Don't convict my friend Ruef.' ''

An order to show cause having issued upon this affidavit, the petitioner appeared before the Hon. M. T. Dooling and offered himself as a witness and testified in his own behalf.

He was granted a full hearing and allowed by the court to give his version of the affair. The court found and recited in the order or judgment as follows:

"That all the facts and things stated and contained in said affidavit of Isaac Penny are true, and occurred in the City and County of San Francisco, State of California.

"That at the time the said Creely made said remark to said jury, and the members thereof, and so conducted himself as set forth in said affidavit, said Creely was personally acquainted with one of said deputy sheriffs in charge of said jury and knew him to be such deputy sheriff, and was also acquainted with Edwin Mohrig, one of said jurors in said above entitled cause, and knew that he was a juror in said cause; and that prior to said occurrence the said Creely had in the morning of the same day, read in the morning newspapers that the said jury in the above entitled cause was deliberating thereon in the custody of said officers, and stood seven for acquittal and five for conviction; and that at that time the said Creely further knew that the said persons to whom he addressed said statement and remark were, and constituted, the jury in the above entitled cause, and that they had not been discharged, but were still deliberating upon their verdict, and further then and there believed that they were then on their way to court in custody of said deputy sheriffs.

"That the said Dr. Edward J. Creely then and there in the said City and County of San Francisco made said remark and so conducted himself as above set forth, willfully, unlawfully, knowingly and contemptuously, and the said Creely did then and there thereby willfully, knowingly, contemptuously and unlawfully interfere with the process and proceedings of the above said entitled court."

There is no question but that the facts found by the court show a flagrant contempt, but the petitioner insists that the affidavit does not state facts sufficient of themselves to show that petitioner intended to commit a contempt of court. Certain acts are made contempt of court by section 1209 of the Code of Civil Procedure, among which are the following: "1. Disorderly, contemptuous or insolent behavior toward the judge while holding the court tending to interrupt the due course of a trial or other judicial proceeding. . . . 9. Any other unlawful interference with the process or proceedings of

a court." The right of every superior court of record to punish for contempt of its authority or process is inherent in the very nature of its organization and essential to its existence and protection, and to the due and orderly administration of justice. It is said by Blackstone in his commentaries: "Laws without competent authority to secure their administration from disobedience and contempt would be vain and nugatory. A power, therefore, in the supreme courts of justice to suppress such contempts by an immediate attachment of the offender, results from the first principles of judicial establishments, and must be an inseparable attendant in every superior tribunal. Accordingly, we find it actually exercised as early as the annals of our law extend." The supreme court of the United States in *Ex parte Robinson,* 19 Wall. [U. S.] 505, said: "The power to punish for contempts is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently, to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power." It was said by Bacon in his Essay on Judicature (No. 56) : "The place of justice is a hallowed place, and, therefore, not only the bench, but the foot place and precincts and purprise thereof ought to be preserved against scandal and corruption." The trial jury, in charge of the officers of the law, was an appendage of the court, acting under the authority of the court, and part of the machinery by which Ruef was being tried. It was not only essential that the jury at the time it was selected should be fair and impartial and without prejudice, but the ends of justice required that it should remain so to the time when its verdict should be finally returned. It is the duty of every good citizen to uphold the laws of the land and maintain due respect for the courts. When anyone so far forgets his duties as a citizen as to unlawfully interfere with the proceedings of the courts by attempting to influence a juror who has been sworn to try the case, he should be promptly brought before the court, and such punishment meted out to him as will deter him and others from again attempting the same thing. If a court should allow its jury to be spoken to, to be solicited or advised by strangers as to the case, or as to the course it

should pursue during the progress of the trial, the trial would be a miscarriage, and the court would be held up to scorn and contempt. To the credit of the people, be it said, it seldom occurs that anyone so far forgets himself as to attempt to address or influence a jury or a juror, either before or after the trial has commenced, but in all cases where such conduct has been brought to the attention of the court, the party found guilty has been promptly punished.

This brings us to a discussion of the claim of petitioner that the language used is not stated in the affidavit to have been used with any unlawful intent, or with any intent to influence the jury. The language is that petitioner "called out to said jury and said in a loud and distinct tone of voice so that this affiant and each of the other members of said jury and the deputy sheriffs who were so in charge of said jury could and did hear him, 'Don't convict my friend Ruef.' " It was not necessary for the affidavit on which the proceedings were based to state any more than the facts, and they appear to be fully stated. The fact that the petitioner called out to the jury in a distinct tone of voice "Don't convict my friend Ruef" appears to be all the fact that could be stated. No one but petitioner could look into his mind and tell the intent, object and purpose of the remark. The remark itself from its very language tends to establish that petitioner knew Ruef was on trial, that the jury to whom the remark was made had charge of the case, and the power to either convict or acquit. Petitioner saw the jury and the deputy sheriffs in charge of them—four in number—and knew that Ruef was being tried. He must be presumed to have intended the ordinary consequences of his own deliberate act. If he in fact did not know that it was the jury in the Ruef case, it was strange that he should have addressed them in such language. No other body of men could convict Ruef. Petitioner was given his day in court, his explanations heard, and, after such hearing, the trial court, who saw him and listened patiently to his evidence, found that he made the remark "unlawfully, knowingly and contemptuously." If petitioner knew he was speaking to the Ruef jury, as he must have known, and as the language addressed to them shows, and as the court finds that he did know, and if he used the words set forth in the affidavit (which he does not deny), he committed a flagrant violation of all rules of propriety, and

interfered with the authority and proceedings of the court. The case of *Hutton* v. *Superior Court,* 147 Cal. 156, [81 Pac. 409], is relied upon by petitioner, but it is not in conflict with what has here been decided. In that case it was claimed that the petitioner had violated an injunction prohibiting him from "intimidating or preventing any person from patronizing the restaurant business of one Jean Pon." The court in its opinion said: "It still remains that there is not the slightest intimation contained in the affidavit, to the effect that petitioner had any knowledge that said Mary Duran was a patron of said Jean Pon, had ever been in his restaurant, or had ever been in the place known as No. 1129 Dupont street, or that he had any knowledge of facts reasonably tending to show such a situation of affairs." In the case at bar the very words addressed to the jury, reasonably at least, tended to show that the petitioner knew that he was addressing the jury which was still deliberating on the Ruef case.

Let the petitioner be remanded and the writ discharged.

Hall, J., and Kerrigan, J., concurred.