OPHIR CREEK WATER CO. v. OPHIR HILL CONSOL. MINING CO. et al.

No. 3927.   Decided May 25, 1923. (216 Pac. 490.)

1.  CONTEMPT—INCUMBENT UPON COURT TO CONSIDER LANGUAGE AND INTENT OF DECREE ALLEGED VIOLATED FOR CORRECT INTERPRETATION. In a contempt proceeding, in arriving at a correct interpretation of the decree violated it is incumbent on the court to consider not only the language of the decree, but also the purpose and object of the litigation.

2.  WATERS AND WATER COURSES—DECREE AS TO CONTROL OF WATER BY IRRIGATION COMPANY CONSTRUED. Where a power company, situated on a creek above plaintiff irrigation company, had at a distance farther up taken up waters of the creek with a pipe line, conducting it to its plant, under a decree that, whenever the entire flow of the creek is not being taken up at the intake of the pipe line, defendant shall use for delivery of water from the pipe line to its power house a nozzle with a discharge opening of 2⅜ inches in diameter, and shall, while such overflow continues, permit at least 7.5 cubic feet per second to flow out of said pipe line into the creek, and that, whenever the entire flow of the creek is being taken into the pipe line, defendant shall not be restricted as to size of nozzle, *held* that it was defendant's duty to permit 7.5 feet second feet to flow out of its pipe line and back into the stream whenever the water is not all taken in at the intake, and there was an overflow at the head, and it could not merely use a 2⅜-inch nozzle irrespective of the amount of water returned.

3. CONTEMPT—EVIDENCE ON ISSUES IN TRIAL RESULTING IN DECREE ALLEGED VIOLATED INADMISSIBLE IN CONTEMPT PROCEEDING. In a contempt proceeding for violating a decree, evidence on issues settled on the trial resulting in the decree is inadmissible in the trial of proceedings for the alleged contempt.

Appeal from District Court, Third District, Tooele County; *Ephraim Hanson,* Judge.

Suit by the Ophir Creek Water Company against the Ophir Hill Consolidated Mining Company and others in which a judgment of contempt was entered against defendant Ophir Hill Consolidated Mining Company, from which it appeals.

AFFIRMED.

*Pierce, Critchlow & Marr* and *C. W. Morse,* all of Salt Lake City, for appellant.

*A. A. Duncan* and *O. W. Moyle,* both of Salt Lake City, for respondent.

THURMAN, J.

The district court of Tooele county entered judgment against the defendant, Ophir Hill Consolidated Mining Company, in a contempt proceeding for the alleged violation of a certain decree of said court theretofore entered in an action to quiet title to the waters of Ophir creek, situated in Tooele county. The defendant appeals from the judgment, and assigns as error the rejection of certain evidence over defendant's objection, and an alleged erroneous interpretation of the decree by the court whereby it found the defendant had violated certain provisions of the decree.

Before entering upon a consideration of the questions arising upon the contempt proceeding a brief reference to the water litigation which terminated in the decree referred to will be instructive.

The Ophir Creek Water Company, a corporation, successor in interest to the rights of numerous farmers and waterusers of the community, claiming to be the first appropriators of all the waters of the creek, instituted an action in said court in 1917 against all other persons claiming an interest in the water, for the purpose of quieting plaintiff's title thereto. Plaintiff also prayed for injunctive relief. Among the defendants so sued by plaintiff was the defendant Ophir Hill Consolidated Mining Company, hereinafter called appellant, engaged in operating a power plant by the use of said water, and also engaged in the business of mining. The lands irrigated by plaintiff's stockholders are situated some distance below appellant's power house, so that the waters of the creek, after supplying appellant with water for power purposes, are again returned to the channel of the creek, and then down to the lands of plaintiff's stockholders, where the same are used for irrigation and other beneficial purposes. Prior to the establishment of appellant's business the waters of the creek now owned by plaintiff flowed down to the lands in question through the natural channel of the creek, and considerable quantities thereof were lost by seepage and evaporation. After the mining operations began some arrangement was entered into between plaintiff's predecessors in interest and the predecessors in interest of appellant, which resulted in the construction of a pipe line by the mining company, several miles in length, by means of which the water was diverted from the natural channel of the creek, and thence conveyed parallel therewith through said pipe line to the power house, where it was used for power purposes. It was then returned to the channel of the creek for the use of the farmers below. This contrivance resulted in saving a substantial quantity of water, by reason of which appellant's predecessors in interest acquired certain rights in addition to its rights for power purposes. However, the additional rights acquired by appellant are not involved in this appeal.

A decree was entered in the water case by stipulation of the parties. Only such portions of the decree will be quoted here as appear to have some bearing upon the questions in-

volved. We have italicized such provisions as appear to be of special significance.

Paragraph 3, in part, reads as follows:

"That the said pipe line of the said defendant, Ophir Hill Consolidated Mining Company shall be by it at all times kept in a reasonably practical state of repairs for the carrying of water for the uses aforesaid and for the use of said defendant company for the development of power at its said power house, and for the delivery of water therefrom to the natural stream channel of said Ophir creek below said power house for the use of plaintiff herein. That whenever, and so long as, there is an overflow at the head or intake of said pipe line, that is to say, whenever the entire flow of Ophir creek at the said head or intake of said defendant's pipe line is not being taken into said pipe line, then, in the operation of its said power house, said defendant shall use for the delivery of water from said pipe line upon its water wheel at said power house, *a nozzle with a discharge opening of 2⅜ inches in diameter, and shall at all times while such overflow continues permit at least 7.5 cubic feet per second to flow out of said pipe line into the natural channel of the creek below.* That whenever, and so long as, there is no overflow at the said head or intake of said defendant's pipe line, that is to say, whenever the entire flow of Ophir creek at the said head or intake of said defendant's pipe line is being taken into said pipe line, then, in the operation of its said power house, the defendant shall in no wise be restricted as to the size of the nozzle it may use for the discharge of water upon its said water wheel."

After defining the rights of the various defendants, with certain limitations, the decree then determines the rights of plaintiff in the following language:

"That the plaintiff is the owner of the right to the use of all of the rest and residue of the flowing waters of said Ophir creek, not hereinbefore specifically awarded and decreed, for the purpose of irrigating the lands of its stockholders, comprising more than 600 acres situate below the mouth of said Ophir canyon, and which said lands in their natural condition are desert and barren, but which when artificially irrigated are fruitful and productive and of great value, and all of the said rest and residue of the said waters of said Ophir creek *are necessarily required, with prudent and economical use, to properly irrigate and maintain fruitful and productive, the said lands of plaintiff's stockholders,* and all of the said rest and residue of said waters, whatever the quantity thereof may have been during the fluctuation of the flow of the said creek in the respective seasons, have been so used for many years last past by plaintiff's stockholders and their predecessors in interest,

and during the nonirrigation season of each year plaintiff is the owner of all the said rest and residue of the waters of said creek for the culinary and domestic use of its stockholders and the watering of their live stock, and said waters have been used for said purposes by plaintiff's stockholders and their predecessors in interest for many years last past."

This brings us to the principal question submitted for our decision. The plaintiff's contention is that appellant, in the operation of its power plant, at times when all the waters of the creek are not being taken in at the head of the pipe, and there is an overflow at the intake, so manipulated its appliances used for controlling the water that 7.5 cubic feet per second were not permitted to flow through its pipe line and thence down to plaintiff, as provided in the decree. On the other hand, defendant contends that at all times it used a 2⅜-inch nozzle for the discharge of the water, just as the decree provides, and that that was the measure of its duty under the decree.

It appears from the evidence in the contempt proceedings that in addition to the nozzle there was also an auxiliary attachment called a needle valve used in supplying water on the wheel. The needle valve was used by a screw and wheel. When the needle valve is screwed down it increases the pressure but decreases the flow of water upon the wheel, and likewise the quantity returned to the channel of the stream. When the needle valve is loosened the pressure is reduced, but the quantity flowing upon the wheel and thence into the channel is substantially increased. The opening of the needle valve permits more water to be taken into the pipe, thereby causing less overflow at the head, but the pressure is thereby decreased to such an extent as to greatly impair the efficiency of the plant in the production of power. Such a controversy, it seems, can only arise between the parties during the period of high water, when there is an overflow at the head. During the period of normal flow the pipe is capable of carrying all the water of the creek, at which time appellant is not restricted as to the size of the nozzle.

The evidence taken by the trial court tends to show that by loosening the needle valve it is possible to take 7.5 second feet

of water through the pipe and discharge it upon the wheel, but the pressure at the power house would be only 270 pounds. On August 6, 1921, the court commissioner found only 6.3 second feet of water being discharged, while 3.3 second feet were overflowing at the intake. At that time the pressure gauge at the power house registered 285 pounds. When the discharge was 7.2 second feet the pressure was 280 pounds. It cannot be denied, under the record before us, that whenever the quantity of water flowing in the creek is such that it is not all taken into the pipe, and there is an overflow at the head, the needle valve can be so manipulated as to increase or decrease the quantity of water discharged at the power house and also the quantity of overflow at the intake of the pipe. That which overflows at the intake is practically wasted, for the distance down to the lands to be irrigated is about 5 miles.

With the foregoing explanation the real grievance of each of the parties may be briefly summarized as follows: Plaintiff insists that, whenever the entire flow of the creek is not being taken into the pipe and there is an overflow at the intake, appellant must so control the water by its instrumentalities as to permit 7.5 second feet to be discharged, so that the same may be returned to the channel of the creek. Otherwise plaintiff contends it is being deprived of water to which it is entitled under the decree. Appellant contends that when it discharges the water through a 2⅜-inch nozzle it has complied with the decree, whether the quantity so discharged amounts to 7.5 second feet or less. It further insists that to require it to permit the water to pass through the nozzle and also through the needle valve in order to discharge 7.5 cubic feet at the power house would render its power plant practically useless for the production of electrical energy. If these respective contentions are correct it is manifest that, whatever may be our ultimate conclusion, one or the other of the parties litigant must suffer more or less inconvenience, and probably substantial injury.

In arriving at a correct interpretation of the decree and its meaning and effect it is incumbent upon the court to consider

not only the language of the decree above quoted, and especially the words in italics, but also the purpose and object of the litigation which terminated in the decree. Plaintiff's complaint, in substance, alleged that it and its predecessors in interest for more than 40 years prior to the commencement of the action had been, and plaintiff then was, the owner of all the waters of Ophir creek for the irrigation of certain lands and for other beneficial purposes, except 6½ units out of 182, belonging to a defendant other than appellant, and certain rights for power purposes and sluicing ore belonging to appellant. As to these rights of appellant, however, it is alleged that they are subject to the condition that the water be returned to the stream undiminished in quantity and undeteriorated in quality above the point where plaintiff uses the same. Finally, it is alleged in the complaint that defendants (including appellant) have asserted a claim of interest in said water in excess of their rights, and by means of ditches, pipes, and hydrants have diverted portions of the water away and deprived plaintiff of the use thereof whereby plaintiff has suffered, and, if such wrongs are permitted, will continue to suffer, irreparable injury.

We have seen in the last-quoted paragraph of the decree, above set forth, that the water awarded plaintiff, as therein stated, is necessary and essential for plaintiff's use. It is manifest, therefore, that the purpose and object of the action was to specifically determine the rights of each of the parties, especially of the plaintiff, to a specific quantity of water, and to quiet the title thereto. The quantity of water that each was entitled to was the principal thing to be determined. The method or means of discharging the water was of secondary importance. It is reasonably clear to the mind of the court that it was intended by the decree that appellant should permit 7.5 second feet of water to be discharged from its pipe line and returned to the stream whenever the water was not all taken into the pipe and there was an overflow at the head.

The court is of opinion that the only way by which full effect can be given to the language of the decree is by holding that it was the duty of appellant to so use its

instrumentalities for controlling the water as to permit 7.5 second feet to flow out of its pipe line and back into the stream whenever the water was not all taken in at the intake and there was an overflow at the head.

But it is contended by appellant that the court erred in rejecting certain evidence offered by appellant in the contempt proceedings to the effect that during the period complained of by plaintiff it did not need nor was it using all the water which appellant permitted to flow back into the stream. The evidence was objected to as irrelevant and immaterial, and the court sustained the objection. The evidence was clearly immaterial and inadmissible for more reasons than one. The question as to how much water the plaintiff needed and how much it was entitled to were the very questions that were threshed out and determined in the principal case. Those questions were determined by the decree, and it would be something unheard of before in judicial procedure if such questions could be considered open in a case where a party is charged with violating the decree. Besides this, the fact that water, even in large quantities, is seen at a particular time running to waste hardly rises to the dignity of evidence that a company or entire community is taking more water than it needs. Some individuals of a community may be suffering for water and unable to obtain all that they are entitled to, while others more shiftless, or for some reason unable to use their portion, may allow it to run to waste.

The record is without error, and the judgment of the trial court is affirmed.

WEBER, C. J., and GIDEON, FRICK, and CHERRY, JJ., concur.