146 So. 161

## UTHOFF v. THOMPSON.

No. 31403.

Jan. 3, 1933.

Rehearing Denied Jan. 30, 1933.

Frederick G. Veith, of New Orleans, for appellant.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, for appellee.

OVERTON, J.

This is a petitory action to recover lot 8, in square 153, in the city of New Orleans, laid out according to a sketch, dated March 12, 1912, made by Walter J. Seghers, deputy city surveyor, the square in which the lot is situated being bounded by Breedlove, Panama, and De Armas streets and the Bloomingdale line. The width of the lot is 25 feet, 4 inches, and 6 lines on Breedlove street, and 30 feet, 5 inches, and 3 lines in the rear, by a depth of 117 feet, 5 inches, and 2 lines on the Bloomingdale line, with an increased depth of 3 lines on the dividing line between it and the adjoining lot, namely, lot 7. By an amendment to the petition, plaintiff also sues for rent for the property, in the sum of $15 a month, from March 17, 1927.

The defense to the suit is a denial of plaintiff's claims. Following this denial there is

a reconventional demand for recognition of defendant's title, in which defendant deraigns its title, setting forth two tax sales to John C. Smith, made by the city of New Orleans, in October, 1921, for the taxes due it for the year 1920, assessed in the name of the Widow Jos. A. Quantin. The tax sales cover the property, claimed by plaintiff, to a depth of 57 feet, 2 inches, and 4 lines. In an amended answer, defendant reconvened, in the event of eviction, for $2,790, the cost of a one-story double residence; for $80, the cost of a shed and a fence; for $124, the cost of paving sheds and alleyways, and for 16 loads of filling; and for $61, the amount paid for curbing, drainage, and filling for a sidewalk; the sum total of these demands being $3,055.

There was judgment below in favor of plaintiff for the property and dismissing defendant's reconventional demand, but reserving to defendant the right to remove the buildings and improvements, placed thereon by him, within sixty days from the date of the finality of the judgment.

The right of plaintiff to recover so much of the property, claimed by him, as is included in defendant's deeds, depends upon the validity of the two tax sales, made by the city of New Orleans to Smith for the taxes of 1920, under an assessment made in the name of the Widow Jos. A. Quantin for the taxes of 1920, and upon the binding effect on plaintiff, which should be considered first, of a judgment confirming these tax sales, rendered on March 24, 1925.

At one time Dr. Rivers Frederick was the owner of square 153, in which the lot, claimed by plaintiff, is situated. At that time

the square was subdivided into 10 lots, running from Panama street to the Bloomingdale line, according to a survey made by D. E. Seghers & Sons, in July, 1910. Dr. Frederick had Seghers make, in 1912, a new sketch of lots 7, 8, 9, and 10 of the survey made in 1910. This sketch subdivided these four lots into two, and made these two face on Breedlove street, instead of, as formerly, on Panama street; the former total width of the four lots becoming the depth of the two newly created lots. The two newly created lots were designated in the sketch as lots 7 and 8. Lot 8, according to the new sketch, was sold to plaintiff by Dr. Frederick on March 5, 1913.

Dr. Frederick, apparently forgetting about his new sketch, under which he sold to plaintiff, sold, in 1914, certain lots in square 153, according to the survey of 1910, to E. A. Parsons, except lots 7 and 8. Parsons sold, in 1919, the property acquired by him, according to the plan of 1910, to Widow Jos. A. Quantin. It was in Mrs. Quantin's name that the property, here involved, was sold at tax sale.

The judgment, mentioned above, confirming the two tax sales, is pleaded by defendant as res judicata against any attempt to annul these sales.

Smith, the purchaser at those sales, sold the property there acquired by him to the Commercial Security Company, Limited. The suit to quiet the tax sales, in which several other tax sales were involved, was instituted by Smith's vendee, under the title of "Commercial Security Co., Ltd., v. Estate of B. G. Loos, William Landry, et al." A curator ad hoc was appointed, quoting from the order, "to represent and stand in judgment herein [that is, in the suit to quiet title] for the unknown owner or owners of the property described in the foregoing petition, preceding said tax sales set forth in the said petition, and the Succession and Heirs of B. G. Loos, Wilmot Halsall and William Landry [preceding owners of property, not involved here, whose addresses were alleged to be unknown]."

It is alleged in the petition to quiet title that Mrs. Quantin, in whose name, as tax debtor, the property was sold at tax sale, was a resident of the city of New Orleans, and service of citation was made upon her in person. Service of citation was also made upon such preceding owners, who were absentees, or whose addresses were unknown, or who themselves were unknown, by delivery of citation to the curator ad hoc appointed.

Plaintiff's name is not mentioned in the petition to quiet title, nor in the order appointing the curator ad hoc. Plaintiff, therefore, was a stranger to the suit, unless it may be said that the general language of the order, appointing a curator ad hoc to represent unknown owners, included him, notwithstanding the petition to quiet title did not mention plaintiff's name, or refer to the preceding owner as one unknown or absent, but named such owner as the Widow Quantin, a resident of the city of New Orleans.

The suit to quiet title was instituted under Act No. 101 of 1898, p. 127, relative to the manner of notice and the form of the proceeding to quiet tax titles. In section 1 of the act it is provided that:

"The petition and citation shall be served as in ordinary suits; provided that if the former proprietor be a non-resident of the State, or unknown, or his residence be unknown, the Court shall appoint a curator ad hoc to represent him and receive service. * * * "

◼ In our view, plaintiff, whose right of ownership in the property, claimed by him, does not appear from the proceeding to have been even suspected, was not a party to the suit, but an utter stranger to it. The order, appointing a curator ad hoc for unknown owners, did not relate to him, but only to those who were so styled in the petition, or whose residences were alleged to be unknown. The act of 1898 does not contemplate the appointment of a curator ad hoc to represent one who is not referred to in the petition as a former owner, known or unknown, but who is omitted therefrom altogether, nor, as said, does the order appointing the curator contemplate that he should represent such a person.

Defendant cites the case of Hamburger et al. v. Purcell, 139 La. 456, 71 So. 765, as supporting his position that, notwithstanding that plaintiff's name is not mentioned in the proceeding to quiet title, or that it is not mentioned there that the former owner of the property is unknown, or that his residence is unknown, the appointment of the curator to represent unknown owners made the judgment valid. In our opinion, the case does not support defendant's position. There, two children of Mrs. Catherine Schmidt, then deceased, who was the mother, by her first marriage, of one of the children, and, by her second marriage with W. A. Moore, of the other child, brought suit, as the sole heirs of their mother, to recover four squares of ground, acquired by Moore during the existence of the community between him and his second wife, the mother of the plaintiffs in the suit. The property was assessed for taxes and sold, as belonging to W. A. Moore. A suit was thereafter brought to quiet the tax title under the act of 1898. In the petition it was alleged, notwithstanding the fact that the property was sold as belonging to W. A. Moore, that the former owners of the property were unknown, as was also their addresses—a fact which might well coexist with the manner of making the sale. The allegation referred to reads as follows: "That the former owners of said property, if alive, and their heirs and legal representatives, if they be dead, are unknown to him [petitioner], and likewise, their addresses are unknown." The effect of this allegation was to justify the appointment of a curator ad hoc to represent the unknown owners, who included the children of Mrs. Smith, the plaintiffs in the suit for the recovery of the property. Therefore service on the curator ad hoc brought the children into court constructively, vested the court with jurisdiction, and made the judgment, later rendered therein, binding upon them, until set aside by a direct action for one of the causes sanctioned by law. No such action had been brought, and the plaintiffs were therefore precluded by the judgment from recovering.

The petition in the suit to quiet title in the present case contains no such allegation, as to unknown ownership or residence, as did the petition for a similar purpose in the cited case. The cited case does not there-

fore sustain defendant's position. Hence, as plaintiff was not a party to the suit to quiet title, he is not bound by the judgment, rendered therein, and may show the nullity of the tax sales, whatever may be the effect of the judgment as to those who were parties to the suit.

■ The sole ground upon which plaintiff attacks the tax sale, and the sole ground that remains available to him, due to the lapse of three years from the recordation of the sale, is the ground of payment of the taxes, prior to the sale of the property.

■ The assessment sheet for 1920 shows that lot 8 of block 153 was assessed to plaintiff for that year, and the receipt, issued by the city of New Orleans to him, shows that he paid the taxes on lot 8 of block 153, on August 21, 1920, which was prior to the tax sale. It is true that the lot, both in the assessment and in the tax receipt, is described as having slightly less width than it really has, and a little less than one-half of the depth that it, in fact, has, but these differences in measurement are not important. The essential part of the description is the number of the lot and the number of the block, with the names of the streets, bounding the block, the latter to make the identification of the block more certain. The width and the depth of the lot assessed is governed by the sketch of 1912, creating the lot, which, in this instance is described with ample particularity in the deed, which was duly registered, from Dr. Frederick to plaintiff. When the assessor gave the number of the lot and of the block, what was meant was all of the lot as created. The old lot 8, according to the survey of 1910, passed

out of existence, upon the creation of the new lots 7 and 8, in 1912, out of the former lots 7, 8, 9, and 10.

■ The taxes for 1920, in our view, must be held to have been paid on the entire lot. The tax sale must therefore be declared absolutely null. This ground of nullity is not affected by the peremption of three years, established by article 10, § 11, of the Constitution of 1921. With the nullity of the tax sales, no question remains concerning the validity of plaintiff's title as against the world. He has the prior registered title.

■ There must be considered now defendant's reconventional demand for the value of the improvements. There is no doubt in our minds that defendant was, as were also his predecessors, a possessor in good faith. The possessor in good faith, or his assigns, is entitled to reimbursement for the improvements, placed by him on the land, to the extent of the enhanced value of the soil, or to the extent of the value of the materials and the cost of workmanship, at the option of the owner of the land. Civ. Code, art. 508. However, the improvements must be on the land of the one from whom reimbursement is demanded, and not wholly, or partially, on the land of another. Where, for instance, the improvement is a house, the possessor, although in good faith, must remove that part of the house resting on the land of the one from whom reimbursement is claimed. John Gordon, Administrator, v. Fahrenberg & Penn, 26 La. Ann. 366.

■ In this instance, the first improvement to be considered, with reference to reimbursement, is the dwelling house. One half of it is constructed on plaintiff's property. The

remaining half is on lot 7 of the sketch of 1912, which belongs to another. The half of the house—a double dwelling, erected on the dividing line—resting upon plaintiff's property, will have to be removed by defendant, for plaintiff cannot be called upon to take one-half of a dwelling house, although a double one, with the complications that may arise from the joint ownership.

█ As to the remainder of the improvements, the record does not disclose their situation with reference to lots 7 and 8 of the sketch of 1912. Besides, if any of them are such as will not work an unjust hardship on plaintiff to pay for, to the extent that they may be partially on his land, the record does not show either the cost of such parts or the enhancement that they give to plaintiff's lot. Therefore we think that defendant cannot recover here for them, but that his right, such as it may be, to sue for reimbursement for them hereafter, should be reserved to him, should he elect not to remove them.

█ So far as relates to plaintiff's demand for compensation for the use of the property, the record fails to disclose what the compensation should be. This demand was rejected below. In accordance with plaintiff's answer to the appeal, the judgment should be amended to allow him to sue for this compensation, but only for such as may be due from judicial demand until plaintiff is put in possession, since defendant, until then, was a possessor in good faith.

█ As the case is before us on a suspensive appeal, there is no occasion to extend the sixty-day period from the finality of the judgment for the removal of so much of the dwell-

█

ing as is on plaintiff's lot. The judgment has never become final.

For these reasons, the judgment of the court below is amended by reserving to defendant the right to sue for compensation for the improvements, other than said dwelling house, placed upon plaintiff's property by him or his predecessors, should he elect not to remove same, and by reserving to plaintiff the right to sue defendant for such compensation as may be due for the use of his lot from judicial demand herein until plaintiff is put into possession of said lot, and, as thus amended, the judgment is affirmed, the costs of this appeal to be divided between plaintiff and defendant.