[L. A. No. 21820. In Bank. Mar. 3, 1952.]

CITY OF VERNON et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

510

Carson B. Hubbard, City Attorney, Edward R. Young, John F. O'Hara and John W. Shenk, III, for Petitioners.

Fred N. Howser and Edmund G. Brown, Attorneys General, and Bayard Rhone, Deputy Attorney General, for Respondents.

SCHAUER, J.—The city of Vernon and the five members of its city council were found guilty of contempt for failing to obey a mandatory injunction. The petitioners here include the city and four members of the council. The trial court ordered that each petitioner pay a fine, that the individual petitioners be confined in the Los Angeles county jail for a period of five days, and that the individual petitioners be detained in jail until they, as members of the city council, complete all arrangements for financing Vernon's share of the cost of a sewage disposal plant as hereinafter described. In this proceeding the petitioners seek certiorari to annul the judgment of contempt. Their contentions are directed not only at the validity of the contempt proceeding but also at the injunction decree, which has long since become final. We have concluded that the judgment of contempt should be affirmed.

For many years Vernon and others, pursuant to contracts with the city of Los Angeles, disposed of their sewage through the Los Angeles sewer system, which emptied into Santa Monica Bay. Thus there was created and maintained a public nuisance so noisome and notorious as to finally (December 13, 1943) provoke the State of California into bringing the abatement action which forms the basis for this proceeding. By such action the People of the State of California sought to restrain the municipal and public corporations which used the Los Angeles sewer system, and their officers and employes, from discharging sewage into Santa Monica Bay without a permit and to abate the public nuisance which resulted from their sewage disposal. Judgment for plaintiff was entered on February 1, 1946, and affirmed (*People* v. *City of Los Angeles* (1948), 83 Cal.App.2d 627 [189 P.2d 489]); this court denied hearing; and the United States Supreme Court denied certiorari (335 U.S. 852 [69 S.Ct. 80, 93 L.Ed. 400]).

The judgment in material part required that Los Angeles build a sewage treatment plant of sufficient capacity to abate the nuisance; that each corporate defendant either should provide its own facilities for disposing of its sewage in a safe and sanitary manner or should "within ninety days after the

entry of this decree have . . . completed all arrangements necessary for the financing of its proportionate share of said new treatment plant . . . [to be built by Los Angeles] according to the gallonage allotted to said corporation, so that said share will be available as required''; each corporate defendant which elected to use the Los Angeles sewage system was ordered to report to the superior court, on or before April 29, 1946, the arrangements which it made to pay for its share of the plant; the superior court retained jurisdiction to make further orders to carry its decree into full effect. Those are the material terms of the decree which has become final.

The affidavit by which this contempt proceeding was instituted contains the following averments: Vernon elected to use the Los Angeles sewage system. After the denial of certiorari, the trial court ordered the corporate defendants, which had so elected, to report to it on or before August 29, 1949, what they had done to comply with the portion of the judgment requiring them to arrange to finance their share of the cost of the plant. Vernon, instead of reporting its arrangements, reported its reasons for not having complied with that portion of the judgment. Each member of the city council of Vernon has personal knowledge of the terms of the judgment. Neither Vernon nor the council has taken any steps to provide the money necessary to pay Vernon's share of the cost of such plant, although they have the ability to do so.

### Certainty of Injunction

Petitioners cannot be guilty of contempt if the injunction which they violated is so uncertain that they could not determine what it required them to do. (*Weber* v. *Superior Court* (1945), 26 Cal.2d 144, 148 [156 P.2d 923].) Petitioners have been found guilty of violating those provisions of the injunction which required them to arrange for payment of Vernon's ''proportionate share'' of the cost of the plant ''according to the gallonage allotted to said corporation'' and have such undetermined (but ascertainable) sums ''available as required.'' They contend that the judgment is fatally uncertain because it does not determine the amount or fractional interest which constitutes Vernon's ''proportionate share'' or what the cost of the plant will be or how much ''gallonage'' has been allotted to Vernon or to whom or how

or when the undetermined sum shall be "available as required."

In California "resort may be had to the findings of fact and conclusions of law to clarify any uncertainty or ambiguity" in an injunction. (*Gelfand* v. *O'Haver* (1948), 33 Cal.2d 218, 222 [200 P.2d 790]; see, also, *Ophir Creek Water Co.* v. *Ophir Hill Consol. Min. Co.* (1923), 61 Utah 551 [216 P. 490, 492], where the court said, "In arriving at a correct interpretation of the decree and its meaning and effect it is incumbent upon the court to consider not only the language of the decree . . . but also the purpose and object of the litigation which terminated in the decree"; a judgment of contempt for violation of the disputed terms of the decree was upheld.)

If petitioners will consider the 1946 injunction in the light of the findings of fact and conclusions of law and "the purpose and object of the litigation which terminated in the decree," as made evident by the pleadings, they will be able to comply with it. The findings give a definite formula for computation of Vernon's share of the cost; they make it clear that this share is to be paid to Los Angeles; and if Vernon had desired to comply with the decree it could have ascertained the precise amount to be paid at any fixed time by consultation with Los Angeles and, if necessary, under court supervision. As already mentioned, the court had retained jurisdiction to this very end. Other cities, parties to the same basic litigation and subject to the same judgment, have been able to understand and comply with its terms. Also, it is to be remembered, Vernon voluntarily elected to accept these terms of the decree, for abatement of its share of the nuisance, rather than to adopt the alternative of providing its own facilities for sewage disposal. It is not reasonable to infer that Vernon made such election without knowing what it was undertaking. Vernon's share of the cost of the plant based upon estimates known to it at the time of the entry of the decree would have been $901,250. Vernon made no attempt to raise or appropriate this or any other sum. From time to time the estimated cost of the plant increased, but Vernon made no effort to compute or raise its share of the increased cost.

In October, 1949, Los Angeles demanded $1,814,952.60 as Vernon's share; petitioners by resolution took the position that the 1946 judgment "now requires the payment by The City of Vernon of $901,250.00, and . . . gives no legal basis

for the demand of or the payment of $1,814,952.60'' and that Los Angeles purportedly allotted to Vernon ''10,129,968 gallons per day instead of 10,300,000 gallons per day as allotted by said judgment.'' It thus appears that in October, 1949, petitioners recognized that the 1946 judgment required them to raise money to be paid to Los Angeles but took the erroneous position that a liquidated, rather than a to-be-calculated, amount to be raised and paid was fixed by that judgment. Their present claim that they do not know to whom the money should be paid does not appear to be advanced in good faith. Indeed, as will hereafter appear, their chief objection to the injunction appears to be not so much that it is uncertain but that notwithstanding the finality of the judgment, it is erroneous. The judgment, of course, makes abatement of the nuisance an absolute requirement not dependent on the cost thereof.

### Sufficiency of Affidavit

Petitioners urge that the affidavit by which this proceeding was begun is fatally defective because it does not allege the date when they should have complied with the January, 1946, judgment. As stated, that judgment required that Vernon make its financial arrangements ''within ninety days after the entry of this decree.'' █ The mandatory provisions of the judgment were stayed by the appeal (*City of Pasadena* v. *City of Alhambra* (1946), 75 Cal.App.2d 91, 95 [170 P.2d 499]) and the District Court of Appeal further stayed enforcement of the judgment until final decision of the United States Supreme Court on the petition for certiorari. Thus the 90 days after *entry* of the decree had long since passed when the judgment became final. The trial court did not fix, and Vernon did not ask it to fix, a new date for performance.

█ In the contempt proceeding the trial judge took the position that the 90 days commenced to run when the judgment became final. This view is supported by *Fenton* v. *Farmers' & Merchants' Nat. Bank* (1901), 27 Tex. Civ. App. 231 [65 S.W. 199, 201]. There a decree awarded land to plaintiff on condition that it pay a certain sum ''within 90 days from the date of said decree''; the judgment was stayed pending appeal. It was held that the 90-day period began to run when the judgment became final after disposition of the appeal. In accord are *Southern Oil Co.* v. *Scales* (1902, Tex.Civ.App.), 69 S.W. 1033; *Norris* v. *Kelsey* (1915), 60 Colo.

297, 300 [152 P. 1167]; and *Uthoff* v. *Thompson* (1933), 176 La. 599 [146 So. 161, 165]. This position is fair to petitioners and we are in accord with it.

Petitioners rely upon *In re McDonald* (1932), 217 Cal. 29, 31 [16 P.2d 995], for the proposition that the affidavit must show that they had personal knowledge of the outcome of the appeal and the petition for certiorari, and upon *Phillips* v. *Superior Court* (1943), 22 Cal.2d 256, 258 [137 P.2d 838], for the proposition that the fact that they were parties to those proceedings does not charge them with knowledge of the outcome thereof. However, on the facts established here, those cases clearly are not controlling. ■ The affidavit sufficiently shows petitioners' personal knowledge of the final disposition of the proceedings to review the injunction decree by its averments that after that decree became final petitioners took certain steps (the filing of an application[1] for a permit to use the new plant and the making of a report to the trial court stating "its reasons for not having complied with . . . [a certain provision] of the judgment") in attempted compliance with certain provisions of the decree (not the provisions under consideration in this contempt proceeding). (See *Romine* v. *Cralle* (1890), 83 Cal. 432, 437 [23 P. 525].)

■ Petitioners attack the sufficiency of the affidavit on the further ground that it does not allege that they intended to violate the injunction. They rely on *Hutton* v. *Superior Court* (1905), 147 Cal. 156, 160 [81 P. 409]. It is there said, "Contempt proceedings are quasi-criminal in their nature, and an intent to commit a forbidden act is as essential to guilt as in the case of a criminal offense." This is not to say, as petitioners seem to believe, that the affidavit must contain the words "intent to violate the terms of the injunction"; it is sufficient if it appears from the affidavit, as it does here, that the citees, with knowledge of the injunction and with ability to comply, did not obey it. (See *Hume* v. *Superior Court* (1941), 17 Cal.2d 506, 513 [110 P.2d 669]; *Ex parte Creely* (1908), 8 Cal.App. 713, 719 [97 P. 766].)

### Sufficiency of the Evidence

■ Petitioners urge that because John Leggett, who made the affidavit of contempt, did not testify, the evidence is in-

---

[1]As shown by the affidavit for contempt, the application was filed on August 24, 1949 (after the judgment had become final) and such application avers that "This application is made pursuant to the Order of the Superior Court . . . contained in that certain Judgment," etc., the judgment identified being the basic injunction decree herein concerned.

sufficient to support the finding that they were in contempt. They cite no authority and give no reason in support of their claim that the case against them should be proved by the affiant, rather than by the testimony of other witnesses and by documentary evidence.

▇ Petitioners also contend that there is no evidence that they had knowledge of the terms of the injunction. This contention is wholly lacking in merit. In 1946, when the judgment was rendered, three of the four individual petitioners were members of the Vernon city council. There is evidence that after the judgment was rendered Mr. Young, an attorney who represented the city and the council, appeared before the council, "gave a report on the matter and advised them that an appeal should be taken," and the council authorized him to do so. The trial court was justified in inferring that the three petitioners who were members of the council in 1946 retained their knowledge of the existence of the judgment until it became final and that petitioner R. J. Furlong, who became a councilman in 1948 and has served as such since then, learned of the existence of the judgment in the due performance of his official duties. Also, as already shown (see footnote 1, *supra*), an application indicating knowledge of the terms of the judgment was filed with the State Department of Public Health on August 24, 1949. Likewise, the report to the superior court (filed on or about August 26, 1949) stating reasons for not having complied with the judgment indicates knowledge of its existence and its terms. Although it is said in *Groves* v. *Superior Court* (1944), 62 Cal.App.2d 559, 568 [145 P.2d 355], and in *In re Felthoven* (1946), 75 Cal.App.2d 465, 470 [171 P.2d 47], that "the evidence . . . [is] to be strictly construed in favor of the accused," the annulment of the contempt orders in those cases was not based on a view of the evidence least favorable to upholding the order. ▇ For a reviewing court to construe the evidence in favor of accused would violate the rule that "the review of the evidence is limited to determining whether there was any substantial evidence before the trial court to sustain its jurisdiction." (*Bridges* v. *Superior Court* (1939), 14 Cal.2d 464, 485 [94 P.2d 983], and cases there cited.)[2] Here, the evidence on any reasonable view amply sustains all essential findings.

[2]The Bridges case was reversed on other grounds (314 U.S. 252 [62 S.Ct. 190, 86 L.Ed. 192]).

518

Petitioners further assert that there is no evidence that they intended to violate the injunction. Petitioners, with knowledge of the terms of the injunction and ability to comply therewith, did not do so; it can be reasonably inferred that their inaction was intentional, despite express disclaimers of contemptuous intent. "Disclaimer of an intent to commit contempt is no defense where a contempt clearly appears from the circumstances constituting the act. And one cannot justify disobedience of an order of the court upon the ground that it was based upon the advice of counsel; neither can such disobedience be excused by the fact that it was in good faith and under a mistake as to the law." (5 Cal.Jur., Contempt, § 45; see, also, *Havemeyer* v. *Superior Court* (1890), 87 Cal. 267, 274 [25 P. 433, 10 L.R.A. 650].)

*Asserted Compliance with the Injunction*

Petitioners admit that they "have not exercised any . . . official powers to levy a tax or to incur a bonded indebtedness or impose any . . . charges, to provide the means by which said municipal corporation could or might raise . . . the monies necessary for the payment of the city's alleged proportionate share of the cost of construction of the new treatment plant so that its share would be available as required," but they contend that they have taken other means to comply with the injunction; namely, on advice of counsel, in 1949, they brought an action against Los Angeles in which they allege that in 1909 and 1938 Vernon made contracts with Los Angeles whereby the latter agreed to dispose of Vernon's sewage; Vernon claims rights to sewage disposal under these contracts without payment of its share of the cost of the new plant.[3]

It is manifest that the institution of further litigation is not compliance with the injunction. The issues raised in the injunction proceeding have been litigated and finally adjudicated. The obvious purpose of the injunction was to get the nuisance promptly abated and to that end to get the new plant built and paid for without the delay attendant on independent or later ensuing litigation to determine the validity and effect of the old contracts of Vernon and other corporate defendants. As to these contracts the District Court of Appeal said (p. 648 of 83 Cal.App.2d), "This is a proceeding initiated by the people of the State of California on

[3]The very bringing of this action constitutes further evidence of petitioners' knowledge of the injunction decree.

behalf of the state itself . . . to abate a public nuisance. Therefore, the court rightfully refrained from passing upon any of the rights, obligations or liabilities affecting the various defendants by reason of their contractual relations with each other, and left those matters open for future adjudication in a proper proceeding. Although the aforesaid contracts concerned the disposal of sewage, the court would not be justified in this action to adjudicate the rights existing between the various appellants by reason of their contracts one with the other. Insofar as the judgment herein is concerned, if any of the appellants have any rights against the city of Los Angeles, or vice versa, by reason of any existing contract, such rights have been preserved and may be enforced in a proper action."

This ruling preserves to petitioners all contractual rights they may possess under the mentioned contracts but likewise it requires them to settle or litigate those rights independently of compliance with the injunction decree. Vernon's continued reliance on its 1909 and 1938 contracts with Los Angeles is, in effect, a refusal to abandon contentions which were made and decided against it in the injunction suit. The judgment in that suit and the decision of the District Court of Appeal, which has become final, conclusively establish that the bringing of actions upon the old contracts with Los Angeles is not compliance with the injunction and that such litigation remains open for determination on its merits, unaffected by the injunction decree. (*Norris* v. *San Mateo County Title Co.* (1951), 37 Cal.2d 269, 272 [231 P.2d 493].)

The individual petitioners urge that so long as they might be confined in the Los Angeles county jail pursuant to the contempt order they could not comply with the injunction because they could not meet as a city council in Vernon. Respondent answers this contention adequately by pointing out that most omissions which are contempts cannot be corrected while the contemnor is in jail but that, if the contemnor indicates his willingness in good faith to perform, he would be entitled, and will be allowed, to leave the jail in order to do so.

The conduct of the petitioning councilmen which was found contemptuous was not the conduct of private individuals but that of public officials protecting the interests of the municipality which they were elected to serve, acting under the advice of counsel; and since the making of the contempt

order they have fully complied with the requirements of the injunction. The argument is made on behalf of petitioners that by reason of those facts the punishment of the individual petitioners by fine and imprisonment is so extreme as to be beyond the range of proper judicial discretion. Such argument, however, is not a proper one to address to this court at this time. It includes facts not all of which were before the trial court at the time of the proceedings under review. Our power of review on the present record is limited, by section 1074 of the Code of Civil Procedure, to a determination "whether the inferior tribunal . . . has regularly pursued the authority of such tribunal," and the reasonableness of the punishment cannot be passed upon in these review proceedings (see *In re Carboni* (1941), 46 Cal.App.2d 605, 614 [116 P.2d 453]). The trial court, however, on its own motion or on application by petitioners, may remit the unexecuted provision of the judgment that petitioners personally be punished for contempt. The argument based on the mitigating circumstances above mentioned may in all propriety be addressed to that court, and it is to be presumed that it will take into consideration such mitigating circumstances and make an order appropriate in the premises.

For the reasons above stated the judgment of contempt is affirmed.

Gibson, C. J., Traynor, J., Spence, J., and McComb, J. pro tem., concurred.

EDMONDS, J.—I concur in the conclusion that, under applicable principles, the petitioners were guilty of contempt. I base this concurrence solely upon the ground that Vernon's suit against the city of Los Angeles was not filed within the time fixed by the injunction for complying with its provision.

The judgment in the abatement action required each city which did not provide its own sewage disposal facilities to complete "all arrangements necessary for the financing of its proportionate share of said new treatment plant" within 90 days. Vernon took no steps within the required time to comply with that order. However, prior to the commencement of the contempt proceedings, it filed an action against the city of Los Angeles seeking to avoid any liability for the cost of the Hyperion plant or to recover such amounts as might be due under existing contracts.

The injunction in no way restricts the "arrangements"

which the city might make to meet its obligations. Any rights it has in the contracts sued upon are assets. Certainly if its position is upheld, it will be able to satisfy all demands which may be made upon it for payment of its share of the cost of the new treatment plant.

The course which Vernon took was open to it under the injunction provisions. In affirming the judgment in the abatement action, it was held: "This is a proceeding initiated by the people of the State of California on behalf of the state itself, and on behalf of the State Department of Public Health, as well as other state agencies, against all named defendants, to abate a public nuisance. Therefore, the court rightfully refrained from passing upon any of the rights, obligations or liabilities affecting the various defendants by reason of their contractual relations with each other, and left those matters open for future adjudication in a proper proceeding. Although the aforesaid contracts concerned the disposal of sewage, the court would not be justified in this action to adjudicate the rights existing between the various appellants by reason of their contracts one with the other. Insofar as the judgment herein is concerned, if any of the appellants have any rights against the city of Los Angeles, or vice versa, by reason of any existing contract, such rights have been preserved and may be enforced in a proper action. All of appellants' property and rights were preserved to them and the judgment in the instant action does not impair or violate any of their constitutional rights." (*People* v. *City of Los Angeles*, 83 Cal.App.2d 627, 648 [189 P.2d 489].)

This language is said to have required the city "to settle or litigate those rights independently of compliance with the injunction decree." Further, it is read as a determination of the present controversy.

I do not so interpret the opinion. The clear import of the decision of the District Court of Appeal is that the abatement action was not the proper proceeding in which to adjudicate private rights. The contract rights of all parties were specifically preserved. The question as to whether there were rights which would reduce or eliminate financial obligations under the injunction was specifically left open. It is clear that the only result of the abatement proceeding was to determine the duties of the respective defendants in abating the nuisance. Whether, as between each other, there existed rights to have one assume the responsibilities of another, was

not determined. Clearly an action to secure judicial determination of these rights was a possible "arrangement" which would comply with the injunction.

I, therefore, find no basis for holding that the petitioners are continuing to violate the injunction. At most, there was a mere technical violation of the court's decree by the failure to sue within 90 days. There is no showing that, by the delay of a few days, the petitioners in any way impeded or subverted the ultimate purpose of the injunction. In a case such as this, where it is claimed that public officials have not performed their duties, sound public policy should require a much greater flouting of the court's authority than the technical violation of one phase of the involved and complicated order of this case.

In my opinion, one claiming that a judgment of the kind here involved has been disobeyed should be required to show that the delay has in some way obstructed the fulfillment of the purpose for which the judgment was rendered. In the present case, the failure to comply with the court's order within the specified time has not delayed the abatement of the nuisance nor obstructed the carrying out of the court's purpose. This is an additional circumstance which the trial court may well consider in determining whether the unexecuted portion of the judgment should be remitted.

I would modify the judgment by striking therefrom the order for the continuing imprisonment of petitioners C. W. Trowbridge, C. H. Mailliard, Genevieve Anderson and R. J. Furlong.

CARTER, J.—I dissent.

In my opinion the judgment of contempt should be annulled for two reasons: (1) The insufficiency of the affidavit upon which the order to show cause *in re* contempt was based; and (2) the uncertainty and ambiguity of the injunction which has allegedly been violated.

### Insufficiency of the Affidavit

The affidavit of John T. Leggett, assistant sanitary engineer of the Bureau of Sanitary Engineering of the State Department of Public Health of Los Angeles, does not allege the date on which petitioners were required to comply with the terms of the judgment of January, 1946. The judgment provides as follows: "It is further Ordered, Adjudged And Decreed that as to those corporate defendants who do not adopt some method of disposing of sewage originating in the

corporate limits of such defendants other than a new treatment works at Hyperion, that such defendant shall, within ninety days after the entry of this decree, have filed an application with the State Department of Public Health of the State of California for a permit to discharge its sewage through a proposed new treatment plant to be built at Hyperion, and that such defendants shall have by said time completed all arrangements necessary for the financing of its proportionate share of said new treatment plant or works according to the gallonage allotted to said corporation so that said share will be available as required.'' The affidavit sets forth a statement to the effect that an appeal was taken from said judgment to the District Court of Appeal, and was affirmed on February 11, 1948; that petitioners sought certiorari in the United States Supreme Court which was denied in October, 1948, and ''that the judgment of this Court is now final.'' There is no allegation that the 90-day period commenced to run from any particular time, or that it has now expired. In *In re McDonald*, 217 Cal. 29, 31 [16 P.2d 995], it was held that personal knowledge of the existence and status of a decree must be alleged. The affidavit contains an allegation that all ''of said persons named above has personal knowledge of all the terms and provisions of said judgment,'' but it was held by this court in *Phillips* v. *Superior Court*, 22 Cal.2d 256 [137 P.2d 838], that an allegation that the citee had actual knowledge of a judgment in an action to which he was a party is not sufficient to show that he had knowledge that the judgment had been affirmed on appeal and had become final.

Petitioners also contend, and, in my opinion with merit, that the affidavit is insufficient because it did not allege (nor was there testimony to the effect) that they intended to violate the injunction relying on *Hutton* v. *Superior Court*, 147 Cal. 156, 160 [81 P. 409], wherein it was said: ''Contempt proceedings are quasi-criminal in their nature, and an intent to commit a forbidden act is as essential to guilt as in the case of a charge of a criminal offense.'' The majority answers this contention by saying that it is sufficient if it appears from the affidavit ''as it does here, that the citees, with knowledge of the injunction and with ability to comply, did not obey it.'' The effect of the two errors is to allow a judgment of contempt to rest upon two assumptions—that the petitioners had *knowledge* of the time the 90-day period commenced to run and *intended* to violate the injunction. The majority bases its

finding of intention to violate the injunction on its assumption of petitioners' knowledge of the time within which the 90-day period was to run.

The California courts have held that reviewing courts are to construe the affidavit in a contempt proceeding very strictly in favor of the accused and that no intendments are indulged in aid of its sufficiency (*In re Felthoven,* 75 Cal.App.2d 465, 470 [171 P.2d 47] ; *Frowley* v. *Superior Court,* 158 Cal. 220, 224 [110 P. 817].) In the Felthoven case it was said that "The affidavit, the order to show cause, the evidence and the findings in a contempt of court proceeding are to be strictly construed in favor of the accused, and the presumption in favor of the regularity of the proceedings and the judgment does not apply in contempt matters." Yet the majority here is assuming facts in order to fill the gaps in the affidavit and thus uphold the judgment. Since a contempt proceeding is "quasi-criminal" in nature (*Hutton* v. *Superior Court,* 147 Cal. 156 [81 P. 409]) this method of affirmance can hardly be said to be in accordance with recognized principles of due process of law. Another inference drawn by the majority is that R. J. Furlong, who did not become a councilman until 1948, knew of the course of the action because of his official capacity. The original judgment was rendered in January, 1946, but Mr. Furlong is imprisoned because of an inference which the majority says must have occurred because of his position. In *Lindsley* v. *Superior Court,* 76 Cal.App. 419, 425 [245 P. 212], it was said that the affidavit must set forth not merely the ultimate facts, but the facts themselves. This would seem to be more than applicable here.

### Insufficiency of the Injunction

I have quoted the judgment in the first part of this dissent. It makes no provision for the amount of money that these petitioners shall make "all arrangements necessary" to raise, and remains silent with respect to whom it shall be paid. The majority opinion points out that resort may be had to the findings of fact and conclusions of law to clarify any uncertainty or ambiguity in an injunction (*Gelfand* v. *O'Haver,* 33 Cal.2d 218, 222 [200 P.2d 790]) and concludes that these findings and conclusions, together with the pleadings, make it clear that the money is to be paid to the city of Los Angeles, that the findings set forth a definite formula for computation of Vernon's share of the cost of the sewage disposal plant. *The findings and conclusions are not included in the record before this court,* and resort must be had to the case of *People*

v. *City of Los Angeles,* 83 Cal.App.2d 627 [189 P.2d 489] (affirming the judgment in the public nuisance action) where they are partially set forth. It appears to me that the record in *this* case must speak for *itself.* If petitioners are to be found guilty of contempt committed because of an alleged violation of a judgment which, in order to be construed, must be interpreted in the light of the findings of fact and conclusions of law which preceded it, it would appear to me that the burden is being placed on petitioners to prove themselves not guilty of the charges against them. This is contrary to settled principles of law. Conceding that the majority is correct in assuming that resort may be had to the findings of fact and conclusions of law to explain the judgment, it does not follow that this rule is applicable to a case such as this where the findings and conclusions are not a part of the record in the contempt proceeding. In fact, even though resort is had to the decision of the District Court of Appeal on the appeal from the judgment in which the injunction was granted, it is impossible to determine therefrom what, specifically, defendants are required to do in order to comply with the injunction.

Where in the judgment is to be found a statement of Vernon's proportionate share, which is to be fixed according "to the gallonage allotted to said corporation"? In order to determine what Vernon's share is, it is necessary, according to the majority, for petitioners to go back to the findings of fact and conclusions of law filed in the nuisance action and use the formula there set forth. Even if this were possible, I do not believe such a burden can lawfully be imposed upon citees in a contempt action. But, assuming that such a burden may be imposed, there is still no definite or ascertainable and fixed amount which petitioners can be said to be required to raise. In 1946, petitioners' share of the cost of the plant "based upon estimates known to it at the time of the entry of the decree would have been $901,250. . . . In October, 1949, Los Angeles demanded $1,814,952.60 as Vernon's share." It appears that the original estimate of the total cost of the project was to have been $21,000,000, but according to the Leggett affidavit such an amount has already been exceeded although the plant was then only 50 per cent complete, indicating a probable total cost of some $43,000,000 and, in light of the change in economic conditions, a possible total cost of many millions more. Petitioners are to be jailed and fined for failing to raise an indefinite and unascertained amount of money to be available *as required.* I agree with

petitioners who ask "available to whom, when and where, and how much?" The majority admits that petitioners cannot be guilty of contempt if the injunction which they violated is so uncertain that they could not determine what it required them to do. If petitioners are to be found guilty of contempt because of a violation of the injunction, interpreted in the light of the findings of fact, it appears to me that they may only be held liable for Vernon's share of the estimated cost of $21,000,000, because that is the estimate on which the formula is based and which appears in *People* v. *City of Los Angeles, supra,* 83 Cal.App.2d 627, at page 637. The record does not show that any demand was made on them for any sum approximating this amount.

If petitioners are to be held to a proportionate share of the total cost of the plant which, at the time of the commencement of this proceeding, was only 50 per cent complete and had already exceeded the total estimated amount, then this action is premature. There is no possible way for petitioners to know what Vernon's proportionate share will be when the sewage plant is completed.

The majority opinion in this case is a typical illustration of the saying that "hard cases make bad law." Because, as a matter of public welfare, the sewage disposal plant is necessary, petitioners are to be imprisoned and fined for relying on the law as set forth in the cases heretofore decided which have held that the affidavit in a contempt action must set forth the facts with particularity, and that the judgment allegedly violated must be sufficiently certain so that it could be carried into effect.

From the foregoing it appears that the majority opinion violates recognized concepts of law applicable to contempt proceedings in order to reach a result, the justness and soundness of which is, to say the least, questionable. I cannot, therefore, subscribe to such holding and would annul the order here under review.

The opinion was modified to read as above printed and petitioners' application for a rehearing was denied April 2, 1952. Carter, J., was of the opinion that the application should be granted.